*879 OPINION.
Milliken :
In order to ascertain the .gain or loss, under the Bevenue Act of 1918, resulting from the sale of property acquired prior to March 1, 1913, the following three elements must appear: (1) The cost of the property, (2) its value on March 1, 1913, and (3) its sale price (United States v. Flannery, 268 U. S. 98; McCaughn v. Ludington, 268 U. S. 106; Appeal of Anniston City Land Co., 2 B. T. A. 526).
Here the cost of the 353 acres is absent. However, the Commissioner based his determination of deficiency on 1913 value, and we must assume that in so doing, he followed the law, and therefore, that the March 1,-1913, value was greater than, or at least equal to, the cost of the property. Since the taxable gain is ascertained by deducting from the sale price the cost of the property or its March 1, 1913, value, whichever is the greater, it follows that adding to the March 1, 1913, value results in getting further away from cost. On the other hand, since loss is computed by deducting the sale price from the cost or the March 1, 1913, value, whichever is the lesser, any addition to either of said values has the effect of bringing them together, and the absence of a knowledge of one makes it impossible to say where they will meet. The difference between the computation of loss and gain in such cases, is obvious. We must, therefore, proceed upon the assumption that the March 1, 1913,- value, of the tract of land involved was greater or was equal to its cost (Appeal of George W. Baumhoff, 3 B. T. A. 392; Appeal of Gilbert Butler, 4 B. T. A. 756).
In fixing the March 1, 1913, value at $123,550, the Commissioner to a large extent based his finding on an' appraisement of the tract made on February 5, 1913, for the purpose of ascertaining whether a then existing mortgage deed was well secured. The appraisal fixed a value of that portion of the 760 acres involved in this proceeding at $300 per acre. It clearly appears from the evidence that *880 the president of tbe trust company which held the mortgage directed that the unimproved part of the tract should be appraised as “ acre property” without reference to its value for subdivision purposes, and that the appraisal was made in pursuance of this direction. It further appears that the appraisers kept in view the fact, that under the laws of Kentucky the mortgage could only be foreclosed by proceedings in court, followed by a judicial sale. The property was, therefore, not only appraised merely as acre property, but its value as such was placed at a very conservative figure.
The Commissioner also relies on the affidavit of Alphons Schoen-bachler, who is a dairyman, and owns land in the neighborhood, and who in his affidavit, valued the 353 acres as follows: 200 acres at $275 per acre, and 153 acres at $350 per acre. The Commissioner introduced a letter from the petitioner’s vice president, dated March 29, 1921, in which both the cost and the March 1, 1913, value were fixed at $99,783.46.
It is shown that the vice president took his figures from the books of the company and that the $99,783.46 did not represent either the cost or the March 1, 1913, value of the property, but was a balance remaining on the debit side of the real estate account as of December 31, 1918, on unsold portions of the subdivision.
Schoenbachler’s deposition was taken and it now appears that he possesses little knowledge of real estate values except when such property is used for farming or dairying purposes.
The deposition of D. F. Murphy, one of the men who made the appraisement of February 5, 1913, was taken and he now testifies that in his opinion the 353 acres, when viewed as subdivision property and when the advantages which had been secured prior to March 1, 1913, to the subdivision as a whole, are taken into consideration, were worth as of that date, $1,000 per acre. It appears that Mr. Murphy, on October 6,1924, gave as his opinion, in his affidavit, that the property was worth on March 1, 1913, from $750 to $800 per acre. Mr. Murphy had for 20 years prior to 1904, been tax assessor of the City of Louisville, and since that date he has been continuously employed by the Fidelity Trust Co. and its successor, the Fidelity & Columbia Trust Co., in charge of appraisals.
Among the other witnesses introduced by the petitioner, were four realtors of long experience: Jo. Hieatt, Walter S. Adams, Arthur E. Mueller, and George Henriott. These witnesses placed the March 1, 1913, value at from $850 to $1,000 per acre. The witnesses, Hieatt, Mueller and Henriott, state that as of March 1, 1913, the value of the 353 acres was enhanced to the extent of from $350 to $500 per acre by the improvements made on the remainder of the *881 tract, and by tbe fact that a purchaser of lots in this tract had the right to participate in these benefits.
Taking these figures in connection with the appraisement of February .1, 1918, and also in connection with the valuations arrived at by- the various experts, it is fair to conclude that the 353-acre tract was worth $800 per acre on March 1,1913.
The burden is on the petitioner to show not only that the $50,000 note of G. R. Hunt was worthless and charged off during the year 1919, but also that it was ascertained to be worthless during that year. This burden the petitioner failed to meet. It appears that the financial condition of Hunt underwent no material change after the sale of his stock in June, 1917. The Commissioner did not err in refusing to allow this deduction.

Judgment will be entered on 15 days' notice, v/nder Bule 50.